UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL W. BURLESON,

      Plaintiff,

 v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

Case No. 3:11-cv-05063RBL-KLS

REPORT AND RECOMMENDATION

Noted for January 20, 2012

  Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

  On January 12, 2009, plaintiff filed an application for SSI benefits, alleging disability as of April 22, 2005. See Administrative Record ("AR") 16, 116. His application was denied upon initial administrative review and on reconsideration. See 16, 68, 76. A hearing was held before

REPORT AND RECOMMENDATION - 1

an administrative law judge ("ALJ") on March 22, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 27-65.

On April 26, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-23. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 18, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On January 24, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on June 1, 2011. See ECF #10-11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing other work existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and thus recommends that defendant's decision should be reversed and this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

REPORT AND RECOMMENDATION - 3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    Dr. Parker

A psychiatric evaluation was performed by James Parker, M.D., in mid-March 2004, in which plaintiff was diagnosed with a mood disorder, anxiety and a learning disorder and an attention deficit disorder, both by history. See AR 377. In terms of functional limitations, Dr. Parker opined that plaintiff "could likely do simple, repetitive tasks, but perhaps at a slower pace

REPORT AND RECOMMENDATION - 4

on an intermittent schedule." Id. Both parties agree the ALJ erred in failing to mention this opinion or state what weight he was giving thereto. Defendant argues, however, that such error was harmless, because Dr. Parker merely opined that plaintiff "perhaps" would have to perform at a slower pace on an intermittent schedule, thereby indicating that opinion did not definitively so limit plaintiff in this regard.

The undersigned, however, agrees with plaintiff that the ALJ's error was not harmless in this instance.[1] This is because while it may be that Dr. Parker did not express his opinion with absolute certainty, he did indicate plaintiff might have to perform tasks at a slower pace on an intermittent schedule. To the extent such possibility existed, therefore, Dr. Parker's opinion constituted significant probative evidence the ALJ was required to specifically consider and state what weight he was giving to it. At the very least, given the ambiguity apparent in Dr. Parker's opinion, the ALJ should have exercised his duty to further develop the record on this issue. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record triggered when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence); 20 C.F.R. § 416.912(e)(1) (stating that when evidence received from medical source is inadequate to determine whether claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, when that source's report contains conflict or ambiguity that must be resolved).

---

[1] On the other hand, the undersigned disagrees with plaintiff that to find an error harmless in this context requires a finding that no reasonable ALJ would have reached a different disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Plaintiff contends the harmless error rule announced in Stout is not limited to those situations where an ALJ fails to properly discuss lay witness testimony that is favorable to the claimant. But as the above quote makes clear, the Ninth Circuit expressly confined its ruling to such testimony. See id. Rather, outside the lay witness testimony context, an error will be deemed harmless if it is non-prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." Id. at 1055; see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 5

B. Dr. Lewis

In late March 2009, Jan L. Lewis, Ph.D., completed a mental residual functional capacity assessment ("MRFA") form that contains a "SUMMARY CONCLUSIONS" section, in which she checked boxes indicating plaintiff was moderately limited in a number of mental functional areas. See AR 379-80. A "FUNCTIONAL CAPACITY ASSESSMENT" section is contained in the MRFA form as well, in which Dr. Lewis opined in relevant part:

> . . . [Plaintiff] is capable of simple & repetitive tasks. Can persist at routine [simple, repetitive tasks] in at least 2 h[ou]r intervals throughout an 8 h[ou]r day[.]
>
> . . . [Plaintiff] is capable of interacting appropriately with supervisors and co-workers. Contact with general public should be limited to occ[asional] & superficial due to [plaintiff's] anxiety & reported panic attacks.
>
> . . . [Plaintiff] is capable of identifying and responding appropriately to normal everyday hazards.

AR 381. In his decision, the ALJ found also in relevant part:

> . . . [T]he claimant's mental residual functional capacity was assessed . . . by [Dr.] Lewis . . . , who wrote that the claimant could perform simple, repetitive tasks, and could do so for 2 hour intervals (the time between normal breaks) throughout the usual work day, can interact with supervisors and co-workers, and with the general public in a superficial way occasionally, and could identify and deal with normal hazards (Exh. 8F). I give great weight to this evaluation . . . , considering Dr. Lewis' expertise in evaluations for Social Security disability purposes. . . .

AR 20.

Plaintiff argues the ALJ erred by not mentioning the specific moderate mental functional limitations Dr. Lewis checked in the SUMMARY CONCLUSIONS section of the MRFA form or stating what weight he was giving thereto. The undersigned, however, finds no error here on the ALJ's part. Pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection**

REPORT AND RECOMMENDATION - 6

**III [the FUNCTIONAL CAPACITY ASSESSMENT section] . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC['].**" POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). While is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." <u>Warre v. Commissioner of Social Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the undersigned find or plaintiff point out any valid reasons for not following that directive in this case.

Plaintiff argues the POMS also provides that many of the mental functional areas that Dr. Lewis found her to be moderately limited in, constitute mental abilities necessary to perform any job. <u>See</u> POMS DI 25020B.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010. But the fact that those areas are deemed to be necessary to perform any job is not at all inconsistent with defendant's stated requirement that the ALJ is to consider only the narrative statement contained in Section III of the MRFA form in assessing a claimant's RFC. Indeed, as plaintiff goes on to point out, the specific mental functional areas contained in the SUMMARY CONCLUSIONS section (or Section I) are there solely to make sure the evaluator has considered them in assessing the claimant's residual functional capacity. <u>See</u> POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 ("The purpose of section I . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis.").

Plaintiff goes on to argue that since Dr. Lewis did not include all of the specific moderate functional limitations she checked in Section I in the narrative statement she provided in Section III, it is apparent that she did not take all of them into account. But there is nothing in the POMS

REPORT AND RECOMMENDATION - 7

to indicate that the checked limitations contained in Section I must be translated directly or even substantially into the narrative statement set forth in Section III. Rather, as the POMS expressly states, the check marks only serve to show the evaluator considered them. The mental functional areas Dr. Lewis checked, furthermore, are largely in line with the narrative functional assessment she provided in Section III. See AR 379-81. In addition, while it is true that Dr. Lews is a non-examining physician and appears to have based her findings solely on the evaluation report and opinion of Dr. Parker (see AR 381) – and thus those findings alone do not constitute substantial evidence – this does not mean the ALJ erred in evaluating them, even though by themselves they may not be sufficient to support a finding of non-disability.

  C. <u>Plaintiff's Weight Issues</u>

In his decision, the ALJ noted plaintiff was "consistently described as underweight," but stated that "body habitus" could not "be a factor in deciding disability." AR 19. As pointed out by defendant, "body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to [a claimant's] medically determinable impairment(s) and related symptoms) are not factors in assessing" his or her residual functional capacity. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. That is, because a determination of disability requires that an "inability to work must be due to a medically determinable physical or mental impairment(s)," a claimant's residual functional capacity "must . . . be concerned with the impact of a disease process or injury on" the claimant. Id. at *8 n.5. Therefore, "body habitus must not be allowed to influence" that assessment. Id.

Plaintiff argues the record shows his underweight status is not due to body habitus, but is in fact caused by medically determinable impairments and related symptoms. But plaintiff fails to explain what those impairments are. Indeed, the portions of the record plaintiff cites merely

REPORT AND RECOMMENDATION - 8

show that he has had issues with maintaining a proper weight for most of his life, and that while this certainly has been seen as a concern, no medical source has attributed his underweight status to an actual impairment or disease-related process. See 258, 300, 306-07, 345, 397-99, 403, 425.[2] The mere fact that plaintiff has characterized it as such, furthermore, is not enough to turn it into one. Accordingly, the undersigned finds the ALJ did not err here in attributing plaintiff's weight issues to his body habitus.

Nor does the undersigned find convincing plaintiff's assertion that since obesity is treated as a medically determinable impairment (see SSR 02-1p, 2000 WL 628049 *7), his underweight status should be accorded the same consideration. Nothing in that Social Security Ruling at all indicates defendant has determined to apply the reasoning contained therein to any other weight-related condition outside of the obesity context. Indeed, plaintiff points to no legal authority for such an extension of defendant's rulings. The undersigned thus declines to do so, particularly as no showing has been made that obesity and low weight have similar causes or are viewed and/or treated by the medical community in the same or similar way. See id. at *2 (describing obesity as being "a complex, chronic disease characterized by excessive accumulation of body fat . . . that increases an individual's chances of developing impairments in most body systems," noting further that it "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.").

---

[2] Indeed, the only diagnosis related to plaintiff's weight issues in the record other than being underweight or having a lack of weight gain, is a rule-out diagnosis of malabsorption. See id.; Carrasco v. Astrue, 2011 WL 499346 *4 (C.D.Cal., 2011) ("A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out.") (citing United States v. Grape, 549 F.3d 591, 593-94 n. 2 (3rd Cir. 2008), and Williams v. United States, 747 F.Supp. 967, 978 n. 19 (S.D.N.Y.1990)); ( Simpson v. Commissioner, Social Security Admin., 2001 WL 213762 *8 (D.Or., 2001) (rejecting contention that rule-out diagnoses are equivalent to provisional diagnoses, or that provisional diagnoses create "strong presumption" that alleged disorders are present, noting further that claimant offered "no reason to reject the common sense assumption that 'Rule–Out' simply means that a particular diagnosis is neither ruled in nor ruled out by the examining physician").

REPORT AND RECOMMENDATION - 9

II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility in part because plaintiff had "no treatment whatsoever for any mental impairments." AR 21. Failure to assert a good reason for not seeking

REPORT AND RECOMMENDATION - 10

treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff argues this is not a convincing reason for discounting his credibility, as it is apparent he lacks insight into his mental condition. It is true that the Ninth Circuit has found this basis for discounting a claimant's credibility to be questionable for those individuals with mental illnesses, as they often do not recognize that their condition. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid rejection of claimant's assertions regarding his depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation).

In this case, however, there is no evidence that plaintiff lacks such insight. Indeed, Dr. Parker found his prognosis for recovery to be "[a]verage", indicating he has at least some – if not a relatively good – ability to be aware of and overcome his mental health issues. AR 377. The mere assertion by plaintiff to the contrary, is not sufficient to overturn the ALJ's reliance on his lack of treatment as a proper basis for finding him to be not fully credible. Indeed, the record shows such lack of treatment may be more indicative of an absence of the need for treatment, than poor insight on plaintiff's part. See AR 204, 314, 375, 377. Accordingly, the ALJ properly relied on this basis for discounting plaintiff's credibility.

The ALJ also noted the observation of Dr. Lewis that plaintiff's "alleged limitations are not supported by objective evidence," an observation with which the ALJ concurred. AR 21; see also AR 381. A finding that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). While it is true that the findings and opinions of Dr. Lewis do not alone constitute substantial evidence of disability, they do provide support for the

REPORT AND RECOMMENDATION - 11

ALJ's adverse credibility determination here. In addition, the undersigned notes that Dr. Parker, upon whose evaluation report Dr. Lewis relied, fails to reveal the existence of mental functional limitations to the extent alleged by plaintiff. See AR 377; Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (not improper *post-hoc* rationalization to cite "additional support" in record for ALJ's decision).

The undersigned agrees with plaintiff that the ALJ erred in stating he could not see "any symptoms arising from his mental impairments" (AR 22), as the opinions of both Dr. Parker and Dr. Lewis support a finding that he as at least some such limitations (see AR 377, 379-81). The undersigned also agrees that plaintiff's reports of social isolation and other problems with social functioning are not necessarily inconsistent with the trip he reported taking out of state with his family, as there is no indication in the record of contact with people other than family members on that trip. See AR 21, 50-54. Nevertheless, the fact that these stated reasons for discounting plaintiff's credibility was improper, does not render the ALJ's overall credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the other two valid reasons the ALJ gave discussed above. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

III.  The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

REPORT AND RECOMMENDATION - 12

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a statement from plaintiff's mother, setting forth her observations of plaintiff's symptoms and limitations. See AR 133-40. As noted by plaintiff, the ALJ mentioned this statement, but did not state what weight he was giving thereto or provide any reasons for not adopting it, except to find that it was "much the same" as plaintiff's own reports and testimony. AR 21. The undersigned agrees the ALJ's failure in this regard was error. Defendant argues the ALJ's lack of comment here should be considered harmless error, because plaintiff has failed to show his mother's observations are attributable to medically determinable impairments, and not just dependent on plaintiff's own subjective complaints.

But lay witness statements have value separate and distinct from the objective medical evidence in the record, and provide important information regarding a claimant's ability to function that defendant himself recognizes. See 20 C.F.R. § 416.913(d) (evidence from family members may be used "to show the severity of [the claimant's] impairment(s) and how it affects [his or her] ability to work"). Thus, while it is true that only evidence from "acceptable medical sources" may be used "to establish" the existence of a medically determinable impairment (see 20 C.F.R. § 416.913(a), evidence from other sources, such as plaintiff's mother, still must be considered in evaluating the severity of a claimant's impairments. In addition, plaintiff's mother reports having observed both mental and physical symptoms and limitations that certainly could be attributed to plaintiff's alleged mental and physical impairments. Nor has defendant pointed to any legal authority that requires the claimant to establish a medical basis for the lay witness

REPORT AND RECOMMENDATION - 13

testimony in the record.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

A claimant's RFC thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the mental residual functional capacity to perform "simple tasks, as he is capable of understanding, remembering and carrying out simple instructions and tasks," and to "respond and adapt to work place changes and supervision." AR

REPORT AND RECOMMENDATION - 14

20. On the other hand, the ALJ found that due to "limited socialization," plaintiff "should have limited public and co-worker contact." Id. Plaintiff argues the ALJ erred in assessing the above RFC in light of his errors in evaluating the medical evidence in the record, plaintiff's testimony and the lay witness evidence from his mother. The undersigned agrees that because the ALJ erred in evaluating the medical evidence provided by Dr. Parker and in assessing the lay witness evidence in the record, it is far from clear that his assessment of plaintiff's RFC completely and accurately describes all of his mental limitations.

V.  The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

REPORT AND RECOMMENDATION - 15

substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 61-62. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 61-63. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 22-23. But for the same reasons the ALJ erred in assessing plaintiff's RFC – namely, the ALJ's improper evaluation of the medical evidence from Dr. Parker and in assessing plaintiff's mother's statement – it also cannot be said that the ALJ's step five determination was free of error.

VI. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such

REPORT AND RECOMMENDATION - 16

evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations, his mother's statement, his residual functional capacity, and his ability to perform other jobs existing in significant numbers the national economy, remand for further administrative proceedings is appropriate here.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned therefore recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 20, 2012**, as noted in the caption.

DATED this 4th day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17